



(For Publication)

✓ Priority
___ Send
___ Clsd
✓ Enter
NO JS-5/JS-6
___ JS-2/JS-3

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| LESLIE A. KELLY, et al. | Case No. SA CV 99-560 GLT[JW] |
| Plaintiff, | ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| vs. | |
| ARRIBA SOFT CORP., et al. | |
| Defendants. | |

On apparent first impression, the Court holds the use by an Internet "visual search engine" of others' copyrighted images is a prima facia copyright violation, but it may be justified under the "fair use" doctrine. The Court finds that, under the particular circumstances of this case, the "fair use" doctrine applies, and the Digital Millennium Copyright Act is not violated.

Defendant's Motion for Partial Summary Judgment on Plaintiff's First and Second Claims for Relief is GRANTED. Plaintiff's Motion for Partial Summary Judgment is DENIED.

I. BACKGROUND

Defendant Ditto (formerly known as Arriba) operates a "visual search engine" on the Internet. Like other Internet search engines, it allows a user to obtain a list of related Web content in response

H:\DOCS\GLTALL\LC2\CIVIL\99\99-0560 publ

DEC 16 1999
ENTERED ON ICMS

to a search query entered by the user. Unlike other Internet search engines, Defendant's retrieves images instead of descriptive text. It produces a list of reduced, "thumbnail" pictures related to the user's query.

During the period when most of the relevant events in this case occurred, Defendant's visual search engine was known as the Arriba Vista Image Searcher. By "clicking" on the desired thumbnail, an Arriba Vista user could view the "image attributes" window displaying the full-size version of the image, a description of its dimensions, and an address for the Web site where it originated.[1] By clicking on the address, the user could link to the originating Web site for the image.[2]

Ditto's search engine (in both of its versions) works by maintaining an indexed database of approximately two million thumbnail images. These thumbnails are obtained through the operation of Ditto's "crawler," a computer program that travels the Web in search of images to be converted into thumbnails and added to the index.[3] Ditto's employees conduct a final screening to rank the most relevant

---

[1] This full-size image was not technically located on Defendant's Web site. It was displayed by opening a link to its originating Web page. But only the image itself, and not any other part of the originating Web page, was displayed on the image attributes page. From the user's perspective, the source of the image matters less than the context in which it is displayed.

[2] Defendant's current search engine, ditto.com, operates in a slightly different manner. When a ditto.com user clicks on a thumbnail, two windows open simultaneously. One window contains the full-size image; the other contains the originating Web page in full.

[3] Images are briefly stored in full on Defendant's server until the thumbnail is made; they are then deleted. Joint Stip. ¶ 32. There is no claim that Defendant provides any access to the full-sized images during this period.

thumbnails and eliminate inappropriate images.

Plaintiff Kelly is a photographer specializing in photographs of California gold rush country and related to the works of Laura Ingalls Wilder. He does not sell the photographs independently, but his photographs have appeared in several books. Plaintiff also maintains two Web sites, one of which (www.goldrush1849.com) provides a "virtual tour" of California's gold rush country and promotes Plaintiff's book on the subject, and the other (www.showmethegold.com) markets corporate retreats in California's gold rush country.

In January 1999, around thirty five of Plaintiff's images were indexed by the Ditto crawler and put in Defendant's image database. As a result, these images were made available in thumbnail form to users of Defendant's visual search engine.

After being notified of Plaintiff's objections, Ditto removed the images from its database, though due to various technical problems some of the images reappeared a few times. Meanwhile Plaintiff, having sent Defendant a notice of copyright infringement in January, filed this action in April. Plaintiff argues its copyrights in the images were infringed by Defendant's actions and also alleges Defendant violated the Digital Millennium Copyright Act (DMCA) by removing or altering the copyright management information associated with Plaintiff's images.[4]

## II. DISCUSSION

These cross motions for summary adjudication present two questions of first impression. The first is whether the display of

---

[4] Defendant's request for judicial notice of a Nature article, and Plaintiff's objection to the request, are both inappropriate. The parties have already included this article as Exhibit 5 to their Joint Stipulation of Facts.

copyrighted images by a "visual search engine" on the Internet constitutes fair use under the Copyright Act. The second is whether the display of such images without their copyright management information is a violation of the Digital Millennium Copyright Act.

Summary judgment is proper if there is no genuine issue of fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). If no material historical facts are disputed, the ultimate conclusion to be drawn on the issue of "fair use" is for the Court and not a jury. Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539 (1985); Fisher v. Dees, 794 F.2d 432, 436 (9th Cir. 1986).

A.  Fair Use

In order to show copyright infringement, Plaintiff must show ownership of a valid copyright and invasion of one of the exclusive rights of copyright holders. 17 U.S.C. § 106. Defendant does not dispute the validity of Plaintiff's copyrights or his ownership of them. Defendant also does not dispute it reproduced and displayed Plaintiff's images in thumbnail form without authorization. Plaintiff thus has shown a prima facie case of copyright infringement unless the fair use doctrine applies.

"Fair use" is a limitation on copyright owners' exclusive right "to reproduce the copyrighted work in copies." 17 U.S.C. § 106(1). It is codified at 17 U.S.C. § 107, which provides:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use),

scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

Fair use is an affirmative defense, and defendants carry the burden of proof on the issue. American Geophysical Union v. Texaco Inc., 60 F.3d 913, 918 (2d Cir. 1995); Columbia Pictures Ind. v. Miramax Films Corp., 11 F.Supp.2d 1179, 1187 (C.D. Cal. 1998) ("[b]ecause fair use is an affirmative defense, Defendants bear the burden of proof on all of its factors"). Based on an analysis of the factors, the Court finds there is fair use here.

1. Purpose and Character Of The Use

The first factor considers the nature of the use, including whether the use is commercial or educational. This, however, does not end the inquiry. "Purpose and character" also involve an assessment of whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning,

or message; it asks, in other words, whether and to what extent the new work is transformative." Campbell v. Acuff-Rose Music, 510 U.S. 569, 579 (1994) (citation omitted). "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." Id. at 579.

There is no dispute Defendant operates its Web site for commercial purposes. Plaintiff's images, however, did not represent a significant element of that commerce, nor were they exploited in any special way.[5/] They were reproduced as a result of Defendant's generally indiscriminate method of gathering images. Defendant has a commercial interest in developing a comprehensive thumbnail index so it can provide more complete results to users of its search engine. The Ditto crawler is designed to obtain large numbers of images from numerous sources without seeking authorization.[6/] Plaintiff's images were indexed as a result of these methods. While the use here was commercial, it was also of a somewhat more incidental and less

---

[5/] The use in this case is commercial, but it is unusual and less serious than many other commercial uses. If, for example, Plaintiff's images were used without authorization in advertising for Defendant's Web site, a finding of fair use would be much less likely.

[6/] The parties argue at length about the possibility of blocking the Ditto crawler from a Web site by use of a "robots.txt" file or other methods. Defendant posted instructions on its Web site for blocking the Ditto crawler in March, after Plaintiff's images had already been indexed. Plaintiff's Web sites have never used any of these blocking methods. Joint Stip. ¶ 34.
The Ditto crawler has, in the past, apparently visited sites that were supposed to be blocked. Plaintiff argues this is evidence of bad faith by Defendant and suggests the fair use defense should as a result be precluded. The record shows Defendant made efforts to correct problems of this sort when it became aware of them, and did not act in bad faith.

exploitative nature than more traditional types of "commercial use."[7/]

The most significant factor favoring Defendant is the transformative nature of its use of Plaintiff's images. Defendant's use is very different from the use for which the images were originally created. Plaintiff's photographs are artistic works used for illustrative purposes. Defendant's visual search engine is designed to catalog and improve access to images on the Internet. Joint Stip. ¶¶ 27-29, 32. The character of the thumbnail index is not esthetic, but functional; its purpose is not to be artistic, but to be comprehensive.

To a lesser extent, the Arriba Vista image attributes page also served this purpose by allowing users to obtain more details about an image. The image attributes page, however, raises other concerns. It allowed users to view (and potentially download) full-size images without necessarily viewing the rest of the originating Web page. At the same time, it was less clearly connected to the search engine's purpose of finding and organizing Internet content for users. The presence of the image attributes page in the old version of the search engine somewhat detracts from the transformative effect of the search engine. But, when considering purpose and character of use in a new enterprise of this sort, it is more appropriate to consider the transformative purpose rather than the early imperfect means of

---

[7/] Defendant also sought to promote a now-discontinued software product called Arriba Express. Arriba Express allowed users to "vacuum" an entire originating Web site and store it on their computers simply by pointing at a thumbnail. Joint Stip. ¶ 45-50, Exh. 18. The images would be stored along with all content from the originating Web site. Arriba Express served a function related to that of the search engine, and Defendant's promotion of it represents a related type of "commercial use."

achieving that purpose. The Court finds the purpose and character of Defendant's use was on the whole significantly transformative.

The Court finds the first factor weighs in favor of fair use.

2. <u>Nature of the Copyrighted Work</u>

The second factor in § 107 is an acknowledgment "that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." <u>Campbell</u>, <u>supra</u> 510 U.S. at 586. Artistic works like Plaintiff's photographs are part of that core. The Court finds the second factor weighs against fair use.

3. <u>Amount And Substantiality of the Portion Used</u>

The third fair use factor assesses whether the amount copied was "reasonable in relation to the purpose of the copying." <u>Id.</u> The analysis focuses on "the persuasiveness of a [copier's] justification for the particular copying done, and the enquiry will harken back to the first of the statutory factors, for . . . the extent of permissible copying varies with the purpose and character of the use." <u>Id.</u> at 586-87.

In the thumbnail index, Defendant used Plaintiff's images in their entirety, but reduced them in size. Defendant argues it is necessary for a visual search engine to copy images in their entirety so users can be sure of recognizing them, and the reduction in size and resolution mitigates damage that might otherwise result from copying. As Defendant has illustrated in its brief, thumbnails cannot be enlarged into useful images. Defendant's Memo of P & A, at 3. Use of partial images or images further reduced in size would make images difficult for users to identify, and would eliminate the usefulness of Defendant's search engine as a means of categorizing and improving

access to Internet resources.

As with the first factor, the Arriba Vista image attributes page presents a greater problem because it displayed a full-size image separated from the surrounding content on its originating Web page. Image attributes (e.g. dimensions and the address of the originating site) could have been displayed without reproducing the full-size image, and the display of the full image was not necessary to the main purposes of the search engine.[8]

If only the thumbnail index were at issue, Defendant's copying would likely be reasonable in light of its purposes. The image attributes page, however, was more remotely related to the purposes of the search engine. The Court finds the third factor weighs slightly against fair use.

### 4. Effect of the Use On The Potential Market or Value

The fourth factor inquiry examines the direct impact of the defendant's use and also considers "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." Campbell, supra, 510 U.S. at 590 (citation omitted).

The relevant market is Plaintiff's Web sites as a whole. The photographs are used to promote the products sold by Plaintiff's Web sites (including Plaintiff's books and corporate tour packages) and draw users to view the additional advertisements posted on those Web sites. The fourth factor addresses not just the potential market for a particular photo, but also its "value." The value of Plaintiff's

---

[8] The newer search engine, ditto.com, appears to lessen this problem by eliminating the image attributes page and simultaneously opening the originating Web page along with a full-size image.

photographs to Plaintiff could potentially be adversely affected if their promotional purposes are undermined.

Defendant argues there is no likely negative impact because its search engine does not compete with Plaintiff's Web sites and actually increases the number of users finding their way to those sites.

Plaintiff argues the market for his various products has been harmed. Defendant's conduct created a possibility that some users might improperly copy and use Plaintiff's images from Defendant's site. Defendant's search engine also enabled users to "deep link" directly to the pages containing retrieved images, and thereby bypass the "front page" of the originating Web site. As a result, these users would be less likely to view all of the advertisements on the Web sites or view the Web site's entire promotional message. However, Plaintiff has shown no evidence of any harm or adverse impact.

In the absence of any evidence about traffic to Plaintiff's Web sites or effects on Plaintiff's businesses, the Court cannot find any market harm to Plaintiff. The Defendant has met its burden of proof by offering evidence tending to show a lack of market harm, and Plaintiff has not refuted that evidence. The Court finds the fourth factor weighs in favor of fair use.

5. Conclusion--Fair Use

The Court finds two of the four factors weigh in favor of fair use, and two weigh against it. The first and fourth factors (character of use and lack of market harm) weigh in favor of a fair use finding because of the established importance of search engines and the "transformative" nature of using reduced versions of images to organize and provide access to them. The second and third factors (creative nature of the work and amount or substantiality of copying)

weigh against fair use.

The first factor of the fair use test is the most important in this case. Defendant never held Plaintiff's work out as its own, or even engaged in conduct specifically directed at Plaintiff's work. Plaintiff's images were swept up along with two million others available on the Internet, as part of Defendant's efforts to provide its users with a better way to find images on the Internet. Defendant's purposes were and are inherently transformative, even if its realization of those purposes was at times imperfect. Where, as here, a new use and new technology are evolving, the broad transformative purpose of the use weighs more heavily than the inevitable flaws in its early stages of development.

The Court has weighed all of the § 107 factors together. The Court finds Defendant's conduct constituted fair use of Plaintiff's images. There is no triable issue of material fact remaining to be resolved on the question of fair use, and summary adjudication is appropriate. Defendant's motion is GRANTED and Plaintiff's motion is DENIED as to the copyright infringement claims.

B.  <u>Digital Millennium Copyright Act</u>

Enacted on October 28, 1998, the Digital Millennium Copyright Act (DMCA) implements two earlier World Intellectual Property Organization treaties. Section 1202 of the DMCA governs "integrity of copyright management information."[9] Section 1202(a) prohibits falsification of

---

[9] "Copyright management information" is defined, in relevant part, as:
> [A]ny of the following information conveyed in connection with copies . . . of a work . . . or displays of a work, including in digital form . . . :
> (1) The title and other information identifying the work, including the information set forth on a notice of

(continued...)

copyright management information with the intent to aid copyright infringement. Section 1202(b) prohibits, unless authorized, several forms of knowing removal or alteration of copyright management information.[10/] Section 1203 creates a federal civil action for violations of these provisions.

Plaintiff argues Defendant violated § 1202(b) by displaying thumbnails of Plaintiff's images without displaying the corresponding copyright management information consisting of standard copyright notices in the surrounding text. Joint Stip. of Facts, ¶¶ 64-69. Because these notices do not appear in the images themselves, the Ditto crawler did not include them when it indexed the images.[11/] Id ¶ 70. As a result, the images appeared in Defendant's index without

---

[9/] (...continued)
copyright.
(2) The name of, and other identifying information about, the author of a work.
(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
17 U.S.C. § 1202 (c).

[10/] Section 1202(b) provides, in relevant part,
No person shall, without the authority of the copyright owner or the law--
(1) intentionally remove or alter any copyright management information,
. . .
(3) distribute . . . copies of works . . . knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under [federal copyright law].

[11/] There was one exception--a version of the "Shasta Rainbow" image obtained by the Ditto crawler from a third-party Web site. The copyright notice for that image was incorporated into the image itself (fine print along the edge of the picture). See Joint Stip., ¶¶ 72-73. Plaintiff's allegations of DMCA violations are inapplicable to this image.

the copyright management information, and any users retrieving Plaintiff's images while using Defendant's Web site would not see the copyright management information.

Section 1202(b)(1) does not apply to this case. Based on the language and structure of the statute, the Court holds this provision applies only to the removal of copyright management information on a plaintiff's product or original work. Moreover, even if § 1202(b)(1) applied, Plaintiff has not offered any evidence showing Defendant's actions were intentional, rather than merely an unintended side effect of the Ditto crawler's operation.

Here, where the issue is the absence of copyright management information from <u>copies</u> of Plaintiff's works, the applicable provision is § 1202(b)(3). To show a violation of that section, Plaintiff must show Defendant makes available to its users the thumbnails and full-size images, which were copies of Plaintiff's work separated from their copyright management information, even though it knows or should know this will lead to infringement of Plaintiff's copyrights. There is no dispute the Ditto crawler removed Plaintiff's images from the context of Plaintiff's Web sites where their copyright management information was located, and converted them to thumbnails in Defendant's index. There is also no dispute the Arriba Vista search engine allowed full-size images to be viewed without their copyright management information.

Defendant's users could obtain a full-sized version of a thumbnailed image by clicking on the thumbnail. A user who did this was given the name of the Web site from which Defendant obtained the image, where any associated copyright management information would be

available, and an opportunity to link there.[12/] Users were also informed on Defendant's Web site that use restrictions and copyright limitations may apply to images retrieved by Defendant's search engine.[13/]

Based on all of this, the Court finds Defendant did not have "reasonable grounds to know" it would cause its users to infringe Plaintiff's copyrights. Defendant warns its users about the possibility of use restrictions on the images in its index, and instructs them to check with the originating Web sites before copying and using those images, even in reduced thumbnail form.

Plaintiff's images are vulnerable to copyright infringement because they are displayed on Web sites. Plaintiff has not shown users of Defendant's site were any more likely to infringe his copyrights, any of these users did infringe, or Defendant should reasonably have expected infringement.

There is no genuine issue of material fact requiring a trial on Plaintiff's DMCA claims, and summary adjudication is appropriate. The

//
//
//

---

[12/] Through Defendant's current search engine, ditto.com, the user can no longer open a full-sized image without also opening the site where its copyright management information is located.

[13/] Plaintiff argues Defendant's warnings are insufficient because they do not appear with the thumbnail images on the search result pages produced by the search engine. The Arriba Vista Web site only offered a warning if users clicked on a link to its "Copyright" page. This warning may arguably have been placed in the wrong place to deter some potential copyright infringers. But this does not necessarily mean Defendant "knew" or "should have known" for the purposes of a DMCA violation, especially since Plaintiff offers no evidence of any actual copyright infringement about which Defendant "should have known."

1  Court finds there was no violation of DMCA § 1202.  Defendant's motion
2  is GRANTED and Plaintiff's motion is DENIED on the DMCA claim.

4  DATED: December 15, 1999.

                                    _____
                                    GARY L. TAYLOR
                                    UNITED STATES DISTRICT JUDGE